# MILLARD TIBBITTS v. E. G. STAUDE MANUFACTURING COMPANY AND ANOTHER.[1]

February 5, 1926.

No. 25,035.

**Meaning of word "necessary" in statute respecting additional compensation for retraining.**

1. In determining whether an employe, who in his work has accidentally suffered the loss of a member of his body, is entitled to additional compensation for retraining, under G. S. 1923, § 4274, subd. 43, the word "necessary" therein should not be construed as meaning "indispensable," but such compensation should be found necessary if it appears that the retraining sought will materially assist the employe in restoring his impaired capacity to earn a livelihood.

**Failure to prove that retraining was necessary.**

2. The evidence offered in behalf of the application, though persuasive, was not such as to compel a finding that retraining was necessary in that it failed to show that the retraining sought would materially aid in earning a livelihood.

Workmen's Compensation Acts, C. J. pp. 88 n. 14 New; 115 n. 37.

Certiorari to review the decision of the Industrial Commission refusing compensation during retraining in a proceeding brought under the Workmen's Compensation Act. Affirmed.

*Oscar M. Sullivan, Elmer C. Jensen* and *Stanley S. Zach,* for relator.

*C. E. Warner* and *Mark F. Crotty,* for respondents.

HOLT, J.

Certiorari to review a decision of the Industrial Commission refusing an injured employe additional compensation for retraining purposes.

The facts are as follows: Millard Tibbitts, an employe of E. G. Staude Manufacturing Company, in the course of his employment

[1]Reported in 207 N. W. 202.

received an accidental injury resulting in the loss of an eye. He has received full compensation according to the schedule prescribed in the Workmen's Compensation Act for the loss of that member. Tibbitts was a lathe worker in his employer's machine shop when injured. He still pursues the same work and receives the same wages as before the accident. While learning his trade or working thereat in a Wisconsin town he studied music.

By 'L. 1919, p. 389, c. 365 (G. S. 1923, §§ 2983-2988), there was "established under the direction and control of the state board for vocational education, a division for the training and instruction of persons whose capacity to earn a living has in any way been destroyed or impaired through industrial accident or otherwise." Section 1. The state board for vocational education and the department of labor and industries, or any agency which may succeed it in the administration of the Workmen's Compensation Act, are required to formulate a plan of co-operation with reference to the work of said division. Section 3. The division shall aid those incapacitated within the meaning of section 1 in obtaining such "training and employment as will tend to restore their capacity to earn a livelihood. * * * The division may of its own accord establish or maintain, or in co-operation with local boards of education, assist in establishing or maintaining, such courses as it may deem * * * necessary to accomplish the purposes of this act." Section 4. By L. 1917, p. 830, c. 491 (G. S. 1923, §§ 3041-3047), the state availed itself of the Act of Congress for vocational training, and designated the high school board as the state board charged with the duty of co-operating with the Federal board for vocational education. We infer that the state high school board, when acting for such purpose, is the state board of vocational education named in L. 1919, p. 389, c. 365. The membership of that board is fixed by G. S. 1923, § 2989.

This provision of the Workmen's Compensation Act is the basis for the additional compensation sought by Mr. Tibbitts: "In addition to the compensation provided in the foregoing schedule for loss or loss of the use of a member, the compensation during the period of retraining for a new occupation as certified by the division of

re-education, operating under chapter 365, Laws of Minnesota 1919, shall be sixty-six and two-thirds per cent of the daily wage at the time of the injury, not exceeding twenty-five (25) weeks, provided the injury is such as to entitle the workman to compensation for at least seventy-five (75) weeks in the schedule of indemnities for permanent impairments and provided the Industrial Commission on application thereto shall find that such retraining is necessary and make an order for such compensation." G. S. 1923, § 4274, subd. 43—Workmen's Compensation Act. For such an injury as Tibbitts sustained the schedule of compensation allowed pay for more than 75 weeks. And the division operating under section 1 of L. 1919, p. 389, c. 365, duly certified that Tibbitts' application for retraining as trombone player in the MacPhail School of Music had been approved. Hence it only remained for the Industrial Commission to determine whether such retraining was necessary. If so found the additional compensation must be awarded to apply on the cost of such training.

The Workmen's Compensation Act is to be liberally construed in all its provisions so as to ameliorate the conditions in which accidental injuries in industries have placed its victims. One of the purposes of the act, as disclosed by the above quotation therefrom, is to aid in re-educating or retraining one maimed in his employment so that he may be able to earn a livelihood in some other occupation if the injury has unfitted him or impaired his capacity to so do in the occupation he was pursuing when the accident happened. The question then is whether the evidence adduced demands a finding that it was necessary that Mr. Tibbitts should receive training as a trombone player as requested by him and approved by the division.

We do not believe that within the liberal rule to be applied to remedial legislation involved in the cited statutes the word "necessary" should be given the meaning of "indispensable." Retraining or re-education for some other vocation than the one the accidentally injured employe worked at when so injured, is necessary, in the sense of this law, when such retraining or education will tend

to restore his capacity to earn a livelihood. Restore implies that the accidental injury impaired his earning capacity in the line of work he followed or could follow when the accident befell him.

In this case there is no room for doubting the fact that in his vocation of machinist the injury suffered impaired his earning capacity. True enough, he was receiving the same wages since the injury as before. But the testimony is uncontradicted that now he has no hope of advancement. He will not be given the opportunity of learning to do a higher grade of work, such as tool-making, where the use of both eyes is essential to good work. He also claimed that his efficiency as a lathe operator is impaired, in that in operating the machine he has to lean directly over the spot where the force is applied to the metal upon which the work is being done. This not only makes his work more difficult, but also exposes the remaining eye to greater dangers from injury than it was in when he had the use of both. It is also self-evident that a machinist is more in danger of receiving eye injuries in the course of his work than in the majority of callings. We therefore think the desirability of retraining a machinist having but one eye, so that he may be able to earn a livelihood in an occupation where that eye may be subject to a minimum of risk from accidents, should be a strong circumstance impelling a finding that retraining is necessary. Hardly an impediment to the earning of a living is more insurmountable than that of total loss of sight. If there be any way of lessening the risk of such a calamity overtaking a man, who in his work has accidentally lost one eye, it should be adopted. Furthermore it is common knowledge that, since the advent of the Workmen's Compensation law, a man so maimed as Mr. Tibbitts is handicapped in obtaining employment in his present occupation because of the greater risk in liability incurred by the employer. But, notwithstanding the persuasive arguments presented by the division in its support of Mr. Tibbitts' application, the record is not such as to demand a finding that retraining is necessary. This court cannot reverse unless the evidence submitted by the parties requires a finding contrary to the one made, or reveals the decision to be arbitrary,

or arrived at by misconception of the law, or upon an erroneous theory of the proofs required.

In this instance the memorandum accompanying the decision indicates the chief reason for denying the compensation asked for was that retraining as a trombone player was not shown likely to amount to a restoring of an impaired capacity to earn a livelihood, but rather to the acquisition of an accomplishment. There is no evidence as to Mr. Tibbitts' qualifications for learning to play the trombone efficiently, or of any likelihood of his thereby earning a living, or anything at all. All that is shown is that he had studied music. The training asked for must be such as would "tend to restore [his] capacity to earn a livelihood." L. 1919, p. 389, c. 365, § 4. The division argues that in this day courts and triers of fact must possess judicial knowledge that trombone playing is remunerative. That musicians earn something may be taken for granted. But that all trained musicians earn a livelihood by following that occupation is quite another question. There should be some evidence that the retraining sought will probably result in at least aiding the applicant to earn a living or improving his impaired earning capacity. It ought not to be required to show that the occupation to which a training is sought will give a better living, or that it alone will furnish an adequate living, but it should be shown that it will substantially aid the workman in gaining a livelihood. We think the evidence is not such as to compel a finding that the retraining asked for and approved by the division was necessary.

The decision is affirmed.