## ADAM VIERLING v. SPENCER, KELLOGG & SONS, INC.[1]

November 4, 1932.

No. 28,990.

[1]Reported in 245 N. W. 150.

*Briggs, Weyl & Briggs,* for relator.
*Barton & Mogren,* for respondent.

WILSON, C. J.

Writ of certiorari to review an order of the industrial commission awarding the employe compensation for retraining.

The employe was injured October 13, 1925, resulting in a permanent partial loss of the use of his left hand amounting to 85 per cent and a permanent partial loss of the use of his right hand amounting to 95 per cent. Compensation was paid to the extent of $6,741.30 and hospitalization and medical care to the extent of $1,024.95. The compensation was paid in weekly payments, except the last 80 weeks, for which compensation was paid September 23, 1930, in a lump sum adjustment under authority of the commission.

November 1, 1930, the employe filed a petition for an order allowing compensation for a retraining period. A hearing was ordered. The matter was heard on January 23, 1931, by referee Hatch, who found that the retraining, which was certified by the state department of reëducation, was not necessary, and the application was denied.

The referee filed a memorandum with his decision wherein he stated that the employe for several years had been substantially in this (chicken) business antedating his injury, and that by his own volition and ambition had established himself substantially

in the very business in which he had applied for retraining. The referee concluded that the employe was earning in his new business as much as he had been earning in his former employment prior to his injury. The evidence then showed that the employe had been taking in from $65 to $75 per month from his chicken business. Apparently the referee concluded that this was net income. On the second hearing the employe testified that this income was gross and that he spent just about all of it for feed. The evidence in the first hearing showed that the employe had invested in his five-acre farm and chicken plant about $15,000, but it did not then appear, as it does in the second hearing, that he was in debt about $7,311.11, his real estate all being mortgaged. Upon the entire record, it must be clear that the employe has no such net income from his chicken business as he earned before his injury. On appeal to the commission the decision of the referee was affirmed on April 20, 1931. On May 14, 1931, the employe petitioned for permission to submit additional evidence and therein among other things stated:

"That your petitioner herein believes and he so contends and alleges that compensation for retraining would not have been denied by the referee and by the industrial commission of Minnesota had he at the time or prior to the hearing before the referee realized and understood the nature of the proof he was required to adduce in order to establish his right to compensation for retraining and had he been able to explain to the referee and to the industrial commission to the fullest possible extent his inability to carry on the business of poultry raising without retraining, instruction or experiment.

"That your petitioner believes and he so contends and alleges that he is not now and never has been established in the business of poultry raising, and that he has since taking steps in the month of April, 1930, to enter such business been required to learn by a process of trial and error and that this has resulted in a very considerable monetary loss to him, and that he has continuously since April, 1930, been aware of the fact that he cannot carry on such

business in a successful manner without the aid and assistance of information, training and instruction received not only through the mail from the National Poultry Institute but also by personal contact with expert instructors from the University of Minnesota and elsewhere."

On June 8, 1931, the commission, after a hearing upon the last mentioned petition had on June 4, 1931, granted the request. The prior order denying relief was vacated. The matter then came on for hearing before referee Reynolds, who after hearing made an award of $20 per week for 25 weeks for retraining. This order was affirmed upon appeal to the commission and the writ now before us issued.

G. S. 1923 (1 Mason, 1927) § 4274, states a schedule of compensation, and subd. 43 thereof provides an additional compensation for such retraining for a new occupation as certified by the division of reëducation under §§ 2983-2988 of said statute and as the industrial commission shall find necessary. Such retraining will be found necessary when it will materially assist the employe in restoring his impaired capacity to earn a livelihood. Tibbitts v. E. G. Staude Mfg. Co. 166 Minn. 139, 207 N. W. 202.

We construe this application as one for additional compensation resting in and upon the original proceeding. It is not an independent proceeding; it is a part of the original proceeding. Hence it is not barred by the statute of limitations.

3. Such an application is analogous to an application for further medical benefits necessitated by the original injury. Like such an application, there is no statute limiting the time within which the commission may grant a rehearing. Kummer v. Mutual Auto Co. 185 Minn. 515, 241 N. W. 681. The application here, while not so in form, was in substance and effect a petition for rehearing. It was however perhaps of less serious import than such an application, since it merely requested the privilege to submit further evidence.

The original award for compensation was based upon agreement meeting statutory requirements. When the hearing was first had

on the application for this additional allowance the employe's theory was not developed; and he, apparently ignorant of the real issue involved, did not give the relevant and important testimony within his own knowledge. It may be that his then attorney did not ask the necessary questions. We do not know. When such an incident happens in an action at law it is very unfortunate. But the commission is not bound by common law or statutory rules of procedure. It aims to reach the substantial rights of the parties. § 4313. Indeed, under the spirit and the construction of the workmen's compensation act much must necessarily be left to the discretion of the commission. It guides the state's policy in industrial injury. It has great responsibility and meets delicate problems. The exercise of discretion in the instant case was toward an employe who, according to the department of reëducation, the second referee, who heard the full evidence, and the commission, was entitled to compensation for retraining. The most serious obstacle in his way was the failure properly to present his case or get the referee to grasp his real situation and his relation toward his new undertaking, as well as the net financial results therefrom. No court can approve or encourage the practice of a litigant's trying his case piecemeal or having more than one fair trial. Yet in the instant case the law placed a very definite duty upon the employer. He is no worse off, aside from annoyance and inconvenience, than if the employe had fully presented his case before the first referee. The employe acted promptly in asking for an opportunity to submit further evidence. It is important to keep in mind, in considering whether there was an abuse of discretion, that the employe eventually got only what he was entitled to under the law. The amount involved is not large. We cannot say that the commission abused its discretion in granting the application.

■ The employe was a machinist foreman earning $44.88 per week at the time of his injury. He then and for some time had owned a home consisting of four lots and a house, the value of which did not exceed $5,000. For some years he had kept about 15 chickens which had the run of these lots. In 1928 he decided to

engage in the chicken business. He then began in a small way to buy day-old chicks, gradually increasing the size of his purchases. Up to 1930 he had increased his stock to over 300 chickens. In that year he had about 1,500. About this time he purchased a five-acre farm in White Bear township and built new buildings for poultry. His activity in and since 1930 has been buying day-old chicks, raising them, selling the cockerels on the market, and keeping the hens for egg production. In some years he has suffered loss of chicks to the extent of 25 per cent. The employe has been receiving financial assistance from two sons to the extent of about $100 per month. The nature and extent of his experience with chickens is quite limited. The record shows that he has many things to learn about the chicken business. Being unable to raise his feed, he must buy it. If he is to know his business, which is one of the very few in which he may engage, he must study. His problem is purely an economic one. He must learn to know breeds, to select type, know feed for production or for fattening. Egg production requires energizing types of feed because of the energy required in the laying of eggs. He must know the management of flocks. This includes the study of disease, which is an insidious factor in poultry raising. To know if the flock is on a profitable basis the owner must know scientific selection, management, feeding, and testing. Culls must be eliminated. The owner must know how and why. He must know ventilation and appreciate the heat generated by the fowls. Breeding, too, is a real factor. Without proper training of the chicken raiser, experience is a dear lesson. The raising of chickens is usually a minor enterprise and adjunct to some larger undertaking. It is usually only a contributing enterprise. As such the owner seldom knows whether the chickens are profitable. They may be on a small scale. In many cases they are not. But when the chicken business is one's sole occupation one must necessarily specialize. A specialist must be trained; otherwise he fails. He must have more than chickens and feed. He must know how. If so, his poultry raising is a real business. That is this man's hope. Men in the service of the state encouraged him and recommended his fitness and the propriety of his undertaking. If

he has the recommended training he may succeed. If he may come to understand and know his business, much may be accomplished by others carrying out his directions. Moreover, the training is particularly desirable since the evidence is that one can hardly buy a book that gives the recently discovered information, and that there is possibly no line in agriculture where more changes have taken place in the last three or four years than in the poultry business. The limited experience which the employe has had with chickens may be helpful as a basis for his training, and observations thereof undoubtedly aided the men engaged in vocational training in reaching their conclusions and recommendations.

The evidence tends to show that the employe is a fit and suitable person to train for the raising of chickens and that the training will help him to make a success of his undertaking. He can hardly be expected to succeed without it. The expense for the instruction as such is borne by the state and federal appropriations. The allowance made by the commission is to aid in maintenance while taking the vocational training.

This man is seriously handicapped. His efforts in life must necessarily be slow. It is not fair to expect him to work out his own qualifications. That would be inconsistent with the function of the division of reëducation. That would be hopeless. It would be too slow. He certainly would fail under such strain. He is making a real fight to overcome his unnatural obstacle. There are but few chances for him in that there are not many occupations in which he may engage. The evidence is very convincing that the employe, without the training, cannot make a success of the chicken business, and that the proposed retraining is necessary and that it will materially assist in restoring his impaired capacity to earn a livelihood. We are of the opinion that the commission's finding to that effect is sustained by the evidence.

Affirmed.

STONE, J. (concurring).

In my opinion the statute, G. S. 1923 (1 Mason, 1927) § 4274(43), makes an application for retraining compensation ancillary to the

original proceeding. If that be true, the circumstances of this case present no question of limitation upon the remedy sought but only one as to the jurisdiction of the industrial commission to provide it. In view of the express statutory authority to do so "on application," the jurisdiction plainly exists. If the word "award" used in § 4319 is considered synonymous with "decision," as it should be, the statutory authority for the rehearing is equally plain.

While the jurisdiction of the industrial commission, once it attaches to a claim for compensation, is continuing, it is not without end. Where it terminates in a given case must depend upon the circumstances.

In Kummer v. Mutual Auto Co. 185 Minn. 515, 516, 241 N. W. 681, 682, jurisdiction had plainly continued up to the moment of the allowance of the additional surgical expense there involved. There had been a lump sum settlement expressly obligating the employer to "furnish such medical and surgical treatment as the law required." There was no limitation of the time within which the additional expense might be incurred. Hence, and obviously, the items there involved were properly allowed.