R. J. WILSON COMPANY and another, Appellants, vs. IN-
DUSTRIAL COMMISSION and another, Respondents.

*October 11—November 5, 1935.*

*Sarto S. Balliet* of Appleton, for the appellant R. J. Wilson Company, and *Emmet Horan, Jr.,* of Milwaukee, for the appellant Royal Indemnity Company.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

Martin, J.    The respondent Zunker sustained an injury on November 12, 1926, while in the employ of the appellant

R. J. Wilson Company, while operating for said company a sewer digger. The injury consisted of a compound fracture of respondent's left upper arm. At the time he was twenty-one years of age. The Royal Indemnity Company as insurance carrier made weekly payments to the respondent Zunker until August 28, 1930, amounting in the aggregate to $3,625.12. At the time he sustained his injuries Zunker was receiving a salary of $150 per month. On April 16, 1931, he and the Royal Indemnity Company entered into a stipulation containing, among other provisions, the following:

"That said insurance company, Royal Indemnity Company, agrees to pay to said applicant [Zunker] within ten days from the entry of an award upon this stipulation, the sum of $1,700 in cash in a lump sum; that said sum of $1,700 shall be so paid by said Royal Indemnity Company and shall be accepted and received by said applicant in full payment and discharge of any and all liability of whatsoever nature on the part of said Royal Indemnity Company and/or on the part of said R. J. Wilson Company, under the Workman's Compensation Act of Wisconsin or otherwise. . . ."

"It is further agreed that a final award may be entered herein by the Industrial Commission of Wisconsin, providing for the payment in full release and discharge of all liability herein, pursuant to and upon the terms and conditions of this agreement, of the amount provided for herein and that said Herbert Zunker further agrees that he will not institute any proceedings for the review of any award entered pursuant to this agreement, nor will he appeal from said award nor endeavor in any way to have said award modified or set aside subsequent to the entry thereof."

Pursuant to this stipulation, and on May 15, 1931, the Industrial Commission made its award directing payment of the said sum of $1,700 within ten days thereafter. The last paragraph of said award provides:

. "That upon payment as directed herein, the respondent and insurance carrier shall be released of liability."

Upon payment of the $1,700 as provided for in the award, Mr. Zunker executed a release which, after reciting the total consideration of $5,313.60, provides:

". . . I hereby release and forever discharge the said R. J. Wilson Company, heirs, successors and assigns from any and all actions or causes of action (whether under common law or statute), claims and demands, for, upon or by reason of any damage, loss, injury or suffering which has been or which may be sustained by me in consequence of an accident suffered by me on or about the 12th day of November, 1926, and while in the employ of R. J. Wilson Company which caused a total disability from November 12, 1926, to August 28, 1930."

No reference is made in the stipulation or in the award of the Industrial Commission as to any allowance for increased compensation on account of any alleged violation on the part of the employer of any safety orders theretofore issued by the Industrial Commission, nor did the commission hold the case open for further consideration as to any increased compensation under the provisions of par. (h) of sub. (5) of sec. 102.09, Stats. 1929.

On July 7, 1933, the respondent Zunker filed an application with the Industrial Commission on which a hearing was had on September 8, 1933, resulting in an award for increased compensation of fifteen per cent amounting to $798.75. The commission found that the injury resulted because of the failure of the employer to comply with the commission's orders Nos. 17 and 18, requiring the guarding of setscrews.

On May 15, 1931, being the date of the first award, sec. 102.18, Stats. 1929, provided that unless the liability for increased compensation under par. (h) of sub. (5) of sec. 102.09, Stats., is specifically mentioned, the order, findings, or award shall be deemed not to affect such liability. Par. (h) of sub. (5) of sec. 102.09, Stats. 1929, provides:

"Where injury is caused by the failure of the employer to comply with any statute of the state or any lawful order of

the industrial commission, compensation and death benefits as provided in sections 102.03 to 102.34, inclusive, shall be increased fifteen per cent."

The appellants' first contention is that the claim for increased compensation is barred by the general six-year statute of limitations for the reason that the accident occurred on November 12, 1926, and the claim for increased compensation was not filed until July 10, 1933. Sec. 102.12, Stats. 1925, in effect on the date of the accident, provides:

". . . If no such notice is given and no payment of compensation made, within two years from the date of the accident, the right to compensation therefor shall be wholly barred. . . ."

This statute was amended by ch. 453, Laws of 1929, by addition of the following language:

"In no event shall the right of an employee, his legal representative or dependent, to proceed under section 102.17 extend beyond six years from the date of injury or death or from the date that compensation (other than medical treatment or burial expenses) was last paid, whichever date is most recent."

In the instant case regular weekly payments were made from the date the injuries were sustained until August 28, 1930, at which time there was apparently a dispute as to the extent of the permanent disability.

In the preamble to the award of May 15, 1931, the following recital appears:

"That applicant sustained some permanent disability the extent of which was in dispute, and the applicant contending that his permanent disability is in excess of 25% loss of his left arm at the shoulder, and the respondent and insurance carrier contending that the disability is not in excess of that, and in order to dispose of the matter the parties have agreed upon the payment of the sum of $1,700 in addition to compensation in the sum of $3,625.12 heretofore paid, in full release of liability, that said $1,700 to be paid in lump sum."

Thereafter on July 23, 1931, said sum of $1,700 was paid.

In *Federal Rubber Co. v. Industrial Comm.* 185 Wis. 299, 201 N. W. 261, this court held that the six-year statute of limitations applied to a claim for compensation. In that case, however, more than six years had elapsed from the date of the accident and from the date of the last payment, and the question as to whether payment delayed the operation of the six-year statute was not considered. In *Acme Body Works v. Industrial Comm.* 204 Wis. 493, 234 N. W. 756, 236 N. W. 378, this court said:

". . . However, since the decision in *Federal Rubber Co. v. Industrial Comm.* 185 Wis. 299, 201 N. W. 261, there was written into sec. 102.12, Stats., a specific provision reading: 'In no event shall the right of an employee, his legal representative or dependent, to proceed under section 102.17 extend beyond six years from the date of injury or death or from the date that compensation (other than medical treatment or burial expenses) was last paid, whichever date is most recent.' This is a specific statute of limitations. It was not incorporated in the general statute relating to the limitations of actions. The enactment of this amendment would seem to indicate a legislative belief that the provisions relating generally to the limitations of actions did not apply to proceedings under the Workmen's Compensation Act, notwithstanding the decision in the *Federal Rubber Company Case.* Either that, or a legislative intent that there should be a different time fixed when the statute of limitations should begin to run."

Appellants' counsel contends that the claim for increased compensation is a cause of action separate and distinct from that of primary compensation and that no payment was made as increased compensation; that, therefore, the six-year statute of limitations had run prior to July 10, 1933, being the date on which the application for increased compensation was filed. We cannot agree with this contention. When an employee is injured within the course of his employment he is entitled to compensation. If the injury happens because of the violation of a safety order, as was found to be the

fact in the instant case, the compensation is increased fifteen per cent. There is but the one cause of action. In *Hotel Martin Co. v. Industrial Comm.* 182 Wis. 79, 84, 195 N. W. 865, the Industrial Commission approved a compromise settlement. More than a year thereafter an application was made for treble compensation and an award was entered. In setting aside the award, this court said:

". . . The allowance of treble damages as was here made by the industrial commission and confirmed by the circuit court was a matter which would, if considered at the time of the submission of the proposed settlement to the commission, only increase the amount to be paid; it would still have been compensation just the same and paid to the same dependents, the parents."

The supreme court of Minnesota, in considering an identical situation in the case of *Vierling v. Spencer Kellogg & Sons, Inc.,* 187 Minn. 252, 245 N. W. 150, 152, 85 A. L. R. 165, in adopting the rule that the application for additional compensation is not a new and separate cause of action, said:

"We construe this application as one for additional compensation resting in and upon the original proceeding. It is not an independent proceeding; it is a part of the original proceeding. Hence it is not barred by the statute of limitations. Such an application is analogous to an application for further medical benefits necessitated by the original injury."

Counsel's next contention is that if the claim is not barred by the six-year statute of limitations that it is barred under the two-year statute of limitations provided for in sec. 330.21 (1), Stats. 1925, which provides as follows:

"Within two years: (1) An action upon a statute penalty or forfeiture when the action is given to the party prosecuting therefor and the state or to the state alone, except when the statute imposing it provided a different limitation."

. This section was amended by sec. 37, ch. 79, Laws of 1931, as follows:

"Sub. (1) of sec. 330.21 of the statutes is amended to read: (330.21) (1) An action by a private party upon a

statute penalty or forfeiture when the action is given to the party prosecuting therefor and the state, . . . except when the statute imposing it provides a different limitation."

Counsel makes reference to *Karges v. Industrial Comm.* 166 Wis. 69, 162 N. W. 482; *Cream City F. Co. v. Industrial Comm.* 188 Wis. 648, 206 N. W. 875; and *Calvetti v. Industrial Comm.* 201 Wis. 297, 230 N. W. 130, in which the court used the word "penalty" in connection with increased compensation. The increased compensation allowed in the instant case is not a penalty or forfeiture within the meaning of the foregoing statute. Penalties for violations of safety orders are provided in sec. 101.28, Stats.; the fact that a violation may result in a penalty as well as increased compensation does not mean they are identical. The fact that a violation of a safety order may result in a penalty as well as increased compensation shows a statutory distinction between the two results. The statute specifically provides that where injury is caused by the failure of the employer to comply with any statute of the state or any lawful order of the Industrial Commission that compensation and death benefits *shall be increased fifteen per cent.* In the instant case the violation of the safety orders mentioned only increased the amount to be paid. *Hotel Martin Co. v. Industrial Comm., supra.*

It is further contended that under sec. 102.16 (1), Stats. 1925, the commission had no jurisdiction to enter the award for increased compensation because more than one year had elapsed from the date of the first award, namely, May 15, 1931, and the date of filing the application for additional compensation, namely, July 10, 1933. This statute, in part, provides:

"Every compromise of any claim for compensation under sections 102.03 to 102.35, shall be subject to be reviewed by, and set aside, modified or confirmed by the commission

within one year from the date such compromise is filed with the commission."

Appellants' counsel also relies upon the decisions of this court in *Hotel Martin Co. v. Industrial Comm., supra,* and in *J. I. Case Co. v. Industrial Comm.* 210 Wis. 574, 246 N. W. 591; the latter case involved no question of increased compensation, and since the decision in *Hotel Martin Co. v. Industrial Comm., supra,* the statute, sec. 102.18, Stats. 1929, which was in effect at the time of the respective awards herein mentioned, was enacted and provides that unless the liability for increased compensation under par. (h) of sub. (5) of sec. 102.09, Stats., which provides for the fifteen per cent increase in compensation and death benefits, is specifically mentioned, that the order, findings, or award shall be deemed not to affect such liability.

We observe that the compromise agreement of April 16, 1931, was entered into between the respondent Zunker and the insurance carrier. The employer was not a party to the agreement, although the agreement did purport to release the employer from all liability. Under the provisions of sub. (8) of sec. 102.09, Stats. 1925, the liability of the employer is primary for increased compensation, while the liability of the insurance carrier is secondary, and "any provision in any insurance policy undertaking to guarantee primary liability or to avoid secondary liability for such increased compensation or increased death benefits shall be void." The insurance carrier had no right to bargain for the release of the primary liability of the employer, because the insurance carrier becomes liable for payment only in case there is a judgment unsatisfied against the employer. The theory and legislative intent in allowing increased compensation in instances where the employer violates some safety order resulting in injury to the employee is to induce safety measures

and methods in industrial employment. It would be contrary to public policy to construe the compromise agreement in the instant case as relieving the employer from statutory liability for the payment of increased compensation. No statute has run against the claimant's right to such compensation.

*By the Court.*—Judgment affirmed.