WEST ALLIS SCHOOL DISTRICT,
Plaintiff-Appellant-Petitioner,

v.

DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS
and Victor P. Buff, Defendants-Respondents.

Supreme Court

*No. 82–729. Argued October 3, 1983.—Decided January 31, 1984.*

(Also reported in 342 N.W.2d 415.)

For the plaintiff-appellant-petitioner there were briefs by *Michael J. Sachen,* city attorney, and *Paul C. Hemmer,* assistant city attorney, West Allis, and oral argument by *Mr. Hemmer.*

For the defendants-respondents the cause was argued by *Stephen M. Sobota,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HEFFERNAN, C. J.   This is a review of a court of appeals decision[1] which affirmed a judgment of the circuit court for Milwaukee county, John E. McCormick, Circuit Judge, entered on March 30, 1982, which sustained the prior order of the Labor and Industry Review Commission.  The commission determined that the plain-

---

[1] *West Allis School Dist. v. DILHR,* 110 Wis. 2d 302, 329 N.W.2d 225 (Ct. App. 1982).

tiff, West Allis School District, in violation of sec. 102.35 (3), Stats.,[2] had not shown reasonable cause for its failure to rehire the defendant, Victor P. Buff. By its order the commission directed the school district to pay Buff the wages lost during the period of the unlawful refusal. We affirm the decision of the court of appeals.

Because of the shifting grounds upon which the school district has at various times chosen to rely, it is difficult to state with precision the issue or issues upon which the school district ultimately relies to justify its conduct.

We hold that the requirement of sec. 102.35 (3), Stats., that an "employer who without reasonable cause refuses to rehire an employe who is injured in the course of employment" is subject to pay "wages lost during the period of such refusal," carries with it the requirement that the rehiring be in "good faith," *i.e.*, that the intention of the rehiring employer is to give employment to

---

[2] "102.35 Penalties. (1) . . .

"(2) Any employer, or duly authorized agent thereof, who, without reasonable cause, refuses to rehire an employe injured in the course of employment, or who, because of a claim or attempt to claim compensation benefits from such employer, discriminates or threatens to discriminate against an employe as to the employe's employment, shall forfeit to the state not less than $50 nor more than $500 for each offense. No action under this subsection may be commenced except upon request of the department.

"(3) Any employer who without reasonable cause refuses to re-hire an employe who is injured in the course of employment, where suitable employment is available within the employe's physical and mental limitations, upon order of the department and in addition to other benefits, has exclusive liability to pay to the employe the wages lost during the period of such refusal, not exceeding one year's wages. In determining the availability of suitable employment the continuance in business of the employer shall be considered and any written rules promulgated by the employer with respect to seniority or the provisions of any collective bargaining agreement with respect to seniority shall govern."

the previously injured employee for an indeterminate time and there not be an intent merely to "rehire" in order to comply with the letter of the statute and then to terminate employment. To be in good faith, the employer must rehire the injured employee with the intention of keeping the employee on the job, as it would intend to keep its other employees on the job.

On the basis of evidence believed by the commission and found to be credible and sufficient by both the circuit court and the court of appeals, we conclude that: (1) Under the workers compensation act, including sec. 102.35(3), Stats., Buff was an employee injured in the course of his employment; (2) there was employment available that was suited to Buff's physical and mental qualifications ("limitations"); (3) there was no "reasonable cause" demonstrated by the school district to justify the refusal to rehire; and (4) there was evidence, indeed an admission, that the *pro forma* rehiring was not intended to be for an indeterminate time and, therefore, was not in good faith.

We recapitulate the facts leading to this action.

Buff was hired as a general laborer under a CETA (Comprehensive Employment and Training Act) grant by the West Allis School District on March 15, 1975. While so working for the district, on January 29, 1976, he sustained a compensable back injury. He received benefits during his period of disability pursuant to the Wisconsin Workers Compensation Act, ch. 102, Stats.

He returned to work on May 29, 1976, and his employment was ended on June 30, 1976, when the CETA grant for laborers employed by the school district was terminated at the district's request. On May 26, 1976, three days before Buff's return to work, the school district requested the termination of the portion of their CETA grant under which Buff was employed. It has been conceded by the school district that Buff, during the course

of his CETA employment, was "unlawfully" employed by the district, because his duties were that of a "custodian" and not merely of a laborer. The reason the school district gave for requesting termination of the grant was "they [laborers] are no longer a necessary part of our work force." Elsewhere in these proceedings the West Allis district acknowledged that at no time were they, as a school district, authorized to hire "laborers"—that work of that nature was to be performed by city employees and not employees of the school district.

When Buff had been reemployed for less than one month, he was notified that his employment was being terminated pursuant to the school district's request for the termination of general laborer positions under CETA. The CETA laborer position was abolished July 1, 1976. The school district acknowledges that, during the summer, provisional student help was employed to do maintenance work and also a permanent custodian was hired. It is conceded, indeed urged, by the school district that Buff's employment prior to his injury and prior to the termination on June 30, 1976, was that of a custodian and maintenance worker and not that of a general laborer. It is on the basis of the latter fact that the school district puts forth the argument that the rehiring of Buff was impossible because it would have continued him in the unlawful classification as a laborer. Alternatively, it appears that the school district asserts that its own misclassification, or misuse, of Buff prior to the injury made the entire course of CETA employment unlawful and, therefore, for some reason, unexplained, because of the school district's unlawful conduct, Buff should be deprived of benefits under sec. 102.35 (3), Stats., which would inure to any other injured employee who was not rehired.

Following Buff's firing on June 30, 1976, he made application for hearing with the Workers Compensation

Division, alleging that his termination of employment was a refusal to rehire without reasonable cause under sec. 102.35 (3), Stats. On the occasion of the initial hearing, the school district successfully argued that there was no refusal to rehire—that Buff was rehired on May 29, 1976. The fact that he was released on June 30, 1976, the school district asserted, did not vitiate the rehiring, although the school district anticipated that the CETA funding for the position would be terminated pursuant to its own request, made just before Buff's "rehiring." It was the school district's position that a *pro forma* rehiring was sufficient, and whether or not the injured employee was to be fired almost immediately was immaterial; there had been a rehiring.

This ruling of the examiner was set aside by the commission, which concluded on July 12, 1978, that, to comply with the requirements of sec. 102.35 (3), Stats., the rehiring must be in "good faith"—that *pro forma* rehiring was not enough.

Thereafter, there ensued almost two years of procedural delays. The circuit court action to review the 1978 commission order directing payments to Buff under sec. 102.35 (3), Stats., was dismissed, and the matter was again remanded to the commission for determination. Once again the commission on February 14, 1980, found facts as set forth above and specifically found that the only reason given by the school district for terminating Buff's employment was that his services were no longer needed, that *no other reason* for failure to rehire was asserted, that there was no showing by the school district that suitable employment was not available, that no reasonable cause was shown for the failure to rehire the applicant in good faith, and that the school district's rehiring of Buff on May 29, 1976, was not in good faith.

It was from this determination and the order to pay wages under sec. 102.35 (3), Stats., that the school district appealed by bringing an action in circuit court. The circuit court found that there was credible evidence to support the commission's findings, including the finding that, during the summer of 1976, the school district hired two persons to perform substantially the same work that defendant, Buff, had done. The order of the commission was affirmed.

The school district then turned to the court of appeals, attacking the circuit court's approval of facts found by the commission on the ground that the findings were not supported by credible evidence. It also asserted that, because Buff was a CETA employee, the same district could not, under its CETA agreement, keep him on, because to do so would violate a CETA condition, for "the respondent was performing the work of currently employed persons." In its court of appeals brief, the district acknowledged that Buff was working as a custodian. This, the district asserts, was unlawful; and on that foundation it asserts, correctly perhaps, but irrelevantly we believe, that the CETA grant could not appropriately be continued. Again, irrelevant to the present controversy, the school district asserted that, accordingly, it was therefore correct and lawful to terminate the CETA grant for "laborers" which had been paying Buff's wages. It asserted that, as a matter of law, "Use of a CETA employe, such as Buff, to fill a regular custodian or provisional laborer position was prohibited."

In general, the school district took the position that it had no motivation for terminating the laborer positions other than its desire to comply with the federal law. It also asserted that its only obligation was to return the applicant to work, an obligation with which it complied, and that there need be no good faith intention in respect to continuing the employment. The incon-

gruity of the CETA argument—which is an attempt to show the good faith of its conduct—with this latter argument apparently did not trouble the school district.

The court of appeals again reviewed the evidence and made the determination that there was sufficient evidence, in every material respect, to support the findings of the commission. This court will not reexamine the evidence to determine sufficiency. This is a task that has been performed by both the circuit court and the court of appeals. A review for sufficiency of the evidence is not a function of this court. *Winkie, Inc. v. Heritage Bank,* 99 Wis. 2d 616, 621–22, 299 N.W.2d 829 (1981).

The court of appeals concluded that the statute, sec. 102.35 (3), Stats., should be liberally construed to effectuate the beneficent purpose of the workers compensation law—the protection of injured workers—and as so viewed it would be absurd to interpret the statute in a way that an employer could fulfill his obligation under it merely by "rehiring" although the employee could be immediately discharged. Hence, it concluded that the rehiring must be a good faith rehiring with the intent to continue the employment.

It summarily disposed of the district's peripheral court of appeals' argument—the only argument presented on this review—that Buff's discharge could not have been in bad faith "because Buff was unlawfully engaged in performing the work of currently employed regular employees, in violation of CETA regulations."

The court of appeals stated:

"The rule is clear that Buff's right to recover is not defeated because he violated a rule or statute if he was otherwise acting within the scope of employment. *Grant County Service Bureau v. Industrial Commission,* 25 Wis. 2d 579, 585, 131 N.W.2d 293, 296 (1964).

"Accordingly, even if Buff were unlawfully employed, which was not a finding of the commission, he would still be entitled to the protection of sec. 102.35 (3), Stats." 110 Wis. 2d at 308.

The general holding of the court of appeals was that the district violated the good faith element of rehiring when it requested that the federal funds for Buff's position as a laborer be terminated and, hence, never intended to keep Buff as an employee.

On this review it is the position of the school district that the statute must be strictly construed because it is a penal statute. Hence, it is argued that the only literal requirement of the statute is that there be a "rehiring," and here there was. The district points out that there is no express reference in the statute to the element of good or bad faith.

The construction of a statute is a matter of law; and, hence, we are not obliged to follow the commission, which determined that the element of good faith rehiring was implicit in the statute in view of its general purpose.

It appears to this court that the ambiguity in sec. 102.35 (3), Stats., arises from the word, "rehire," as used in the context of the statute and from its location in the statutes as a part of ch. 102 concerning workers compensation.[3] Ambiguity arises when more than one rea-

[3] While portions of the parties' briefs would attribute ambiguity to the phrase, "reasonable cause," we think that, in the context of this case, we are not obliged to construe "reasonable cause," for here the school district contends it did "rehire" Buff. The question is what need be the nature of the rehiring. Need it be in good faith in the sense there is a present intention that there be a resumption of an indefinite term of employment? "Reasonable cause" comes into play when it is asserted by an employer that it has no obligation at all to "rehire" a previously injured worker. Clearly, the statute intimates that there are, or at least may be, cases where there is not an obligation to rehire an injured em-

sonable, although not necessarily correct, meaning can be attributed to a word, phrase, or statute. Here the meaning given to "rehire" by the district is "rehire" *simpliciter*, a not unreasonable view. Certainly, merely giving the job back is a rehiring, although the job is not intended to last another day. On the other hand, "hire" may reasonably carry with it the connotation of the commencement of a protracted or at least an undefined period of employment. Rehire, then, may reasonably mean, as the court of appeals held, that there be a good faith resumption of a course of employment that had been interrupted. The meaning of the word, "rehire," as used in sec. 102.35 (3), hence, is ambiguous.

To construe a phrase or to find the meaning of a phrase that is ambiguous, the intent of the legislature in the using of the word or phrase should be determined. *State v. Tollefson*, 85 Wis. 2d 162, 167, 270 N.W.2d 201 (1978). Thus, sec. 102.35 (3), Stats., and its verbal components must be analyzed in relation to its scope, history, context, subject matter, and object to be accomplished. *Interest of I.V.*, 109 Wis. 2d 407, 409–10, 326 N.W.2d 127 (Ct. App., 1982) ; *Berns v. Wisconsin Employment Relations Comm.*, 99 Wis. 2d 252, 265, 299 N.W.2d 248 (1980).

The school district argues, however, that we need not, and should not, explore for meanings which are not express and explicit. It is asserted that, for the employer's misconduct, "unreasonable" refusal to rehire, the employer may be held liable for the payment to the employee of up to a year's wages. Hence, the district asserts, this is a penal statute, of which fault or misconduct

ployee. "Reasonable cause" may have an uncertain meaning, but we need not construe that phrase in this opinion.

is an element. Accordingly, as a penal statute, it must be strictly construed.

The school district also relies upon dicta in *Dielectric v. LIRC,* 111 Wis. 2d 270, 276, 330 N.W.2d 606 (Ct. App. 1983), which referred to the statute as being "designed to penalize an employer . . . ." Additionally, even a quick perusal of sec. 102.35 Stats., reveals that the entire section is captioned, *"Penalties."* Reasonably this could be viewed as a clue to a legislative intent that subsec. (3), as well as subsecs. (1) and (2), were thought to be penal and, hence, were intended to be strictly construed. However, only (1) and (2) provide penalties or forfeitures payable to the *state,* with pecuniary limits being set for the range of forfeitures—a technique that is typical of the traditional criminal or penal forfeiture statute. Moreover, it is significant that the caption, *Penalties,* appeared in sec. 102.35 when it consisted of only (1) and (2). Hence, it cannot be stated with any certainty that the caption was intended to characterize the nature of the yet to be written sec. 102.35 (3). The *caption* is not typically a part of the bill presented to the legislature and, accordingly, may have nothing to do with the real intent of the legislature.

It should be noted that the subject matter in (2) is identical to that of (3), the statute with which we are concerned in this case. Yet (2) is markedly different in its consequences—the payment of a forfeiture to the state. Thus, it appears, taking the statute in its totality, little deference need be given to the caption as an expression of legislative intent. It is clear that the caption, *Penalties,* applies to (2), but it is not at all clear that (3) was even thought about when sec. 102.35 was captioned. Additionally, the payment of a year's wages has a relationship to the loss sustained by an injured worker when there is a failure to rehire. Sec. 102.35 (3), in fact, limits the employer's liability to less than the

amount a jury could award if the liability were open-ended. Subsecs. (1) and (2) are truly penal, for they are related not at all to the degree of harm done an individual, but are related only to culpability for an offense to the state. Hence, it appears that, even on its face, when contrasted to (1) and (2), (3) is compensatory and not penal.

More importantly, it has long been the holding of this court that workers compensation statutes are to be liberally construed in favor of securing the basic objectives of the law to protect injured workers. This would lead a court to conclude that the statute should be viewed as a compensation payment inuring to the benefit of a worker and not as a penalty imposed on an employer.

In respect to determining whether a statute was penal, a similar rationale was employed by this court in *R. J. Wilson Co. v. Industrial Comm.*, 219 Wis. 463, 263 N.W. 204 (1935). There it was argued that the 15 percent additional compensation to be paid to an injured employee where there was a violation of a safety order was a penalty and, hence, was subject to the shorter statute of limitations. The court pointed out, however, that the violation of a safety order also carried with it a separate sanction that was, without doubt, a penalty, and because there was a separate statutory provision that defined the penal aspect of a single violation, the 15 percent additional compensation was not a penalty. The court said that:

"[T]he fact that a violation may result in a penalty as well as increased compensation does not mean they are identical. The fact that a violation of a safety order may result in a penalty as well as increased compensation shows a statutory distinction between the two . . . ." P. 470.

The same type of statutory distinction exists between sec. 102.35 (2), Stats., and sec. 102.35 (3). Sec. 102.35

(2) is the penal statute. Sec. 102.35 (3), covering the same subject matter, is a provision for additional compensation and is not a penalty. Hence, in accord with long accepted traditional approaches to workers compensation statutes, sec. 102.35 (3) must be liberally construed to afford the aggrieved worker additional compensation.

The Legislative Reference Bureau, in its analysis of 1975 Special Session Senate Bill 2, referring to the provision that became sec. 102.35 (3), stated that the bill provided for "additional payments . . . to be paid to the employee, not exceeding one year's wages." It is significant that the analysis given to the legislators who voted on the bill treated the payments not as a penalty but as additional payments to an aggrieved worker.

Also, as stated above, sec. 102.35 (3), Stats., as a part of the workers compensation act, must be liberally construed to effect as fully as possible the beneficent objectives of the workers compensation act. It was well settled at the time of the enactment of sec. 102.35 (3) that the compensatory aspects of ch. 102 were to be liberally construed.

We conclude that, to liberally construe the act, is to give it meaning that conforms with the purpose of the act and the intention of the legislature.

It is clear from the plain words of the statute that its purpose is to prevent discrimination against employees who have previously sustained injuries and to see to it, if there are positions available and the injured employee can do the work, that the injured person goes back to work with his former employer. This fundamental purpose, and the objective of worker protection explicit in the workers compensation act, makes the construction urged by the school district inappropriate. To merely give back a job, without the intention of permitting the

employment to continue, and then to terminate the employment, obviously does not serve the purpose of the law. The employer cannot be exonerated on the basis of this *pro forma,* but non-substantive, act of rehiring. An approval of a mere *pro forma* rehiring would not deter employers from refusing to rehire, in a substantive sense, employees who are victims of industrial accident; and, more importantly, it would defeat the clear legislative purpose of providing compensation to the employee of not more than a year's wages should the refusal to rehire be found unreasonable.

The court of appeals correctly found that good faith in rehiring was an essential component of an employer's obligation under sec. 102.35 (3), Stats. The court of appeals correctly stated:

"The district's contention that good faith is not required would contravene the beneficent purpose of the statute by allowing the employer to rehire the employe for a day and then terminate the employe. In construing a statute, unreasonableness or absurdity should be avoided. *Larson v. Department of Industry, Labor & Human Relations,* 76 Wis. 2d 595, 609, 252 N.W.2d 33, 39 (1977). We believe that the district's narrow interpretation leads to the unreasonable result of allowing employers to circumvent the rehiring requirement of the statute by terminating employes shortly after rehiring them. The commission's interpretation is a reasonable one which prevents this untoward result." 111 Wis. 2d at 305–06.

While the court of appeals in the case before us correctly concluded that good faith was an essential ingredient of a rehiring which would exonerate an employer who failed to keep an injured employee on the payroll, it did not explain what "good faith" meant in the context of sec. 102.35 (3), Stats.

The court of appeals in *Dielectric v. LIRC,* 111 Wis. 2d 270, 330 N.W.2d 606 (Ct. App. 1983), correctly stated

the salient principles. *Dielectric* involved a claim for additional compensation under sec. 102.35 (3), Stats. Parys, the employee, injured her hand while operating a drill press. After several months, during which she received scheduled worker's compensation, she was rehired at her former wage rate, although at a less onerous job. After more than nine months elapsed, she was discharged for absenteeism. She was fired in conformity with previously stated rules for the imposition of discipline for absenteeism. Nevertheless, she claimed the additional compensation under sec. 102.35 (3). She contended that she was not truly "rehired"—that her hiring was only *pro forma.* The trial court, after an examination of the facts, held there was a rehiring that conformed to the statute, because the rehiring had been in "good faith." The trial court refused to follow the commission's ruling that permitted recovery of additional compensation. The court of appeals affirmed the circuit court, saying:

"Thus, we interpret 'rehire' to mean that the employer must reemploy the injured employee with the intention of continuing to keep this employee on the job. In addition, we conclude that the unreasonable refusal to rehire portion of the statute would still be applicable if the employee is rehired only to meet the technical requirements of sec. 102.35 (3) and then is discharged." Pp. 277–78.

It found that the evidence in *Dielectric* supported the finding that the rehiring was in good faith, that the eventual discharge, nine and one-half months later, came as the result of the intervening excessive absenteeism.

The court of appeals stated that, under the statute, the burden was on the employer to show good faith in respect to the rehiring when there is an eventual discharge. In *Dielectric,* of course, there was the additional burden placed upon the employer to show that the discharge itself was for good cause. The intimation of *Dielectric* is that a subsequent firing for other than good

cause is probative of lack of good faith in the initial "rehiring."

We accept the rationale and holding of the court of appeals both in this case, which we are reviewing, and in *Dielectric* in respect to the requirement that the rehiring not be *pro forma*. It must be in good faith, and the burden of proof in that respect is upon the employer.

Thus, we conclude that the school district's initial argument fails. It initially asserted that the *pro forma* hiring was sufficient to exonerate it from the effect of sec. 102.35 (3), even if, at the very time of the "rehiring," it was maneuvering to have Buff's job terminated. We will not reiterate the analysis of the court of appeals, which demonstrated that, "there was substantial and credible evidence in the record to uphold the commission's findings that the district failed to rehire Buff in good faith." (P. 306) The rehiring was done in the anticipation of the school district that it would shortly be terminated.

The record demonstrates that there was "suitable employment . . . available within the employe's physical and mental limitations." The court of appeals specifically approved the finding that Buff's work exceeded that of a general laborer—that he had worked as a custodian as well. It found that the school district had not demonstrated that Buff performed his custodial duties in an unsatisfactory way. It found, from the record, approving the finding of the commission, that the claim that there was no suitable work available for Buff was refuted by the fact that, shortly after Buff's discharge, the school district "employed summer help and a *new* custodian to perform the same types of duties." (Emphasis supplied.) (P. 307)

As the court of appeals properly determined, the record reveals sufficient credible evidence to support the

finding that there was suitable employment available within the employee's physical and mental limitations. Thus, there was a duty upon the school district to "rehire" unless there was reasonable cause not to.

"Reasonable cause," although a phrase of art in some contexts, appears in sec. 102.35(3), Stats., to have no meaning other than that which may be ascribed to the two words composing it. "Reasonable" is defined in Black's Law Dictionary (Special Deluxe 5th ed., 1979) as "fair, proper, just, moderate, suitable under the circumstances; fit and appropriate to the end in view." "Cause" is defined as "something that precedes and brings about an effect or a result."

Accordingly, an employer, if there is suitable employment available, can only refuse to rehire for a cause or reason that is fair, just, or fit under the circumstances."

Although the argument of the school district is not clearly stated, it appears that, on this review, it has shifted to the position that there is reasonable cause not to rehire, because Buff was a CETA employee and, therefore, not eligible for regular employment. Also, it urges that we correct the language of the court of appeals which, in dictum, stated:

"The rule is clear that Buff's right to recover is not defeated because he violated a rule or statute if he was otherwise acting within the scope of employment." (P. 308)

For this statement the court of appeals cited *Grant County Service Bureau v. Industrial Comm.*, 25 Wis. 2d 579, 585, 131 N.W.2d 293 (1964). While it is true that *Grant County* allowed the initial worker's compensation despite the fact the employee, in attempting to further the employer's interest, was in violation of a work rule, we do not believe that holding can be extrapolated to

mandate in all cases extra compensation and rehiring under sec. 102.35 (3), Stats. The violation of the work rule or statute could be of such a nature that it would furnish "reasonable cause" to refuse to rehire even though the original compensation was not deniable under the facts underlying the *Grant County* rationale. While the statement of the court of appeals is correct if narrowly applied, we consider it too broad a generality to be applicable to all sec. 102.35 (3) situations. Nevertheless, the court of appeals was correct in holding that Buff's CETA status did not bar him from eligibility for rehiring by the school district. His CETA status was irrelevant once the on-the-job injury occurred.

The basic workers compensation statute defines who is an employee and who is an employer, secs. 102.04 and 102.07, Stats. Sec. 102.35 (3) specifically includes all who are employers or employees. Once that employer-employee relationship is established in a manner to trigger the provisions of the workers compensation act, it does not matter whether the worker is a CETA-funded worker or any other type of employee. When an employer takes on that relationship with a CETA employee, he undertakes that relationship *cum onere* with respect to the Wisconsin workers compensation law. There are no exceptions in the Wisconsin law in respect to injured CETA workers or any injured employee. Even were there a finding that the school district had acted unlawfully under federal regulations when it took on a CETA worker to perform custodial duties when only work as a general laborer was authorized, the worker nonetheless was an employee under Wisconsin law.

The school district, however, attempts to rely upon federal law as "reasonable cause" not to rehire Buff. This reliance upon federal law is not well founded. In fact, the application that the school district would give

to the CETA regulations constitutes a possible violation of federal law.

The district states that it cannot rehire Buff because the need for a laborer, if ever there was one, had ceased, and, in addition, to rehire Buff would violate 29 CFR sec. 99.35 (2), a portion of the federal CETA regulations. 29 CFR sec. 99.35 (2) provides, "Shall not result in the displacement of currently employed workers, including partial displacement . . . ."

Inexplicable, the district relies upon this regulation. However wise that regulation may be as a matter of public policy, it is inapplicable here. The finding of the commission, which was approved by the trial court and the court of appeals, was that new jobs were available either as a custodian, who was hired during the summer of 1976, or as provisional workers during the summer.

Hence, the "suitable employment" that was available would have displaced no *currently employed* workers.

The federal provision, 29 CFR sec. 99.35, is irrelevant. More important is the fact that the school district under 29 CFR sec. 99.1 had a positive duty to attempt to place a CETA worker on the permanent payroll, subject, of course, to the nondisplacement of currently employed workers. The school district confuses the fact that a CETA employee should not displace a current employee with the regulation that not only permits CETA employees to be absorbed into the work force, but makes it an obligation of the employer in consideration of the CETA grant.

Section 99.1 (g), Scope and purpose of Part 99, provides:

"(g) In order to provide for the most effective utilization of employment programs, eligible applicants shall attempt to place participants in unsubsidized employment as soon as is feasible. It is understood, however, that economic conditions in many areas will make

it impossible to meet established placement goals. Although these are goals and not requirements, waivers will be provided to local areas experiencing severe economic slow-downs."

Hence, the school district has incorrectly interpreted its obligation under the CETA grant.

When it became apparent that it could no longer appropriately utilize Buff's time as a general laborer and there was "unsubsidized employment" available, it was incumbent upon the district to place the CETA employee in that employment as soon as was "feasible." Without doubt, the school district's position—that, because Buff was a CETA employee, he was ineligible for unsubsidized employment when no currently employed workers would be displaced—is incorrect. To the extent that the school district relied upon this argument, the district has failed to demonstrate reasonable cause not to rehire Buff.

In view of the fact that the court of appeals approved fact findings that a custodian and provisional help were hired shortly after the employment termination of the defendant, that *prima facie* the work was within the physical and mental limitations of Buff as proved by his earlier performance, and that the rehiring was not in good faith, the only possible exoneration available to the school district is "reasonable cause" not to rehire Buff. No reasonable cause not to rehire Buff is asserted on this appeal other than the status of Buff as a CETA employee. That cause is unreasonable and flies in the teeth of not only the obligations of a Wisconsin employer to a Wisconsin employee under ch. 102, but is in contravention of the school district's obligation under the CETA regulations.

The school district's argument is incorrect.

The court of appeals correctly affirmed the commission's construction of sec. 102.35 (3), Stats., to include

the requirement of good faith in "rehiring" an injured worker. The court of appeals, as well as the circuit court, reviewed the evidence and concluded that there was credible evidence that the West Allis School District without reasonable cause failed to rehire the employee, Buff, injured in the scope of his employment, when suitable work was available.

*By the Court.*—Decision affirmed.

WILLIAM G. CALLOW, J. (dissenting). I disagree with the majority's determination that the West Allis School District without reasonable cause failed to rehire Victor Buff when suitable work was available. Because I believe the district properly requested termination of CETA funding for Buff's position, his subsequent discharge fails to show that the district's rehiring was not done in good faith.

The CETA program is a remedial program designed to meet the special needs of chronically unemployed and low income persons. Through CETA funding, which comes directly from the federal government, employers are able to employ persons they otherwise would not have had the funding to hire. Even though CETA employees may perform similar work as regular employees, they are employed subject to the rules and regulations of the CETA program.

Once the district consented to participation in the CETA program, it had an obligation to exercise reasonable diligence to ensure compliance with the program's rules and regulations. Several months after the district received CETA funding for two general laborer positions—one of which was filled by Buff—it discovered that there was insufficient general labor work for the positions. After being unable to remedy this situation, the district took the appropriate steps under CETA regulations and requested that funding for both positions be

terminated. The district, by continuing to receive CETA funding and having Buff continue to perform work other than the authorized general labor work specified under the CETA grant, could have been in direct violation of CETA regulations, which would have resulted in sanctions being applied to the district. Thus, under the circumstances of this case, termination of funding for Buff's position was required by the terms of the CETA program, its implementing regulations, and the CETA agreement.

Although Buff was covered under the protections afforded by sec. 102.35(3), Stats., I believe that the good faith rehiring duty recognized by the majority must be applied in this case in light of the unusual employer/employee relationship created under the CETA program. I conclude that there was sufficient credible evidence to find that the district in good faith rehired Buff in his CETA position when he recovered from his injury. Thereafter, when CETA funding for his position was properly terminated, the district had reasonable cause to discharge Buff. This shows the district made a bona fide effort to place Buff in suitable, available employment, namely, his current CETA position. The district did not, as the majority determined, make a pro forma hiring designed to avoid the obligations imposed by sec. 102.35 (3). Once CETA funding was terminated and Buff was properly discharged, the district had no further obligation to place Buff in other, suitable non-CETA employment. I would reverse the court of appeals.

I am authorized to state that JUSTICE ROLAND B. DAY and JUSTICE DONALD W. STEINMETZ join in this dissenting opinion.