BELOIT CORPORATION, Plaintiff-Appellant, †

v.

State of Wisconsin LABOR & INDUSTRY REVIEW
COMMISSION, and Dennis L. Anderson, Defendants-
Respondents.

Court of Appeals

*No. 88-1885. Submitted on briefs April 3, 1989.—Decided
October 5, 1989.*

(Also reported in 449 N.W.2d 299.)

† Petition to review denied.

For the plaintiff-appellant the cause was submitted on the briefs of *James A. Meier* of *Meier, Wickhem, Southworth & Lyons, S.C.,* of Janesville.

For the defendant-respondent Labor and Industry Review Commission the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Steven M. Sobota,* assistant attorney general, of Madison.

Before Eich, C.J., Dykman and Sundby, JJ.

SUNDBY, J. This case concerns a Wisconsin employer's liability for educational vocational rehabilitation benefits for a nonresident employee whose eligibility for vocational rehabilitation instruction is determined by another state, in this case Illinois. The Labor and Industry Review Commission determined that the Beloit Corporation was liable to Dennis Anderson under sec. 102.43(5), Stats., for temporary total disability during rehabilitation instruction, and, under sec. 102.61(1), for travel expenses during rehabilitation instruction. Beloit corporation appeals from a judgment and an order affirming LIRC's findings and order. We affirm.

## I.
## ISSUES

The following issues are presented. First, did LIRC err in accepting the Illinois Department of Rehabilitation Services' (DRS) certification of Anderson for vocational rehabilitation through a university degree program in mechanical engineering. We conclude that it did not. Second, did DRS abuse its administrative power in

certifying Anderson as eligible for a university degree program in mechanical engineering. We conclude that it did not. Finally, did LIRC err in extending vocational rehabilitation benefits to Anderson under secs. 102.43(5) and 102.61(1), Stats., and Wis. Adm. Code, sec. Ind 80.49, in excess of forty weeks? We conclude that it did not.

## II.
## BACKGROUND

While employed by Beloit Corporation, Anderson suffered temporary total disability and permanent partial disability in an industrial accident on September 11, 1979. He sustained 100% loss of the use of his left arm at the shoulder. He was nineteen years of age and had worked one month for Beloit Corporation. Anderson was an Illinois resident.

Anderson accepted employment with Beloit Corporation to fund his higher education. He was enrolled part-time at Rock Valley College in Rockford, Illinois. Prior to and during his employment, Anderson did not intend to seek an engineering degree. Following his injury, Anderson decided that his vocational goal was to become a mechanical engineer. In August 1980, he again enrolled at Rock Valley College. In June 1981, Anderson applied to DRS for vocational retraining assistance. In August 1981, DRS certified him as eligible for vocational rehabilitation through college training in mechanical engineering.

In the spring of 1982, Anderson applied to Beloit Corporation for retraining assistance in engineering through the employer's cooperative program with the University of Illinois. Beloit Corporation determined, however, that Anderson was not eligible for the program,

but offered him a work/study program which would train him as a draftsperson. Anderson refused the offer, because he believed his physical disability would prevent him from satisfactorily performing such work, and because he had completed one and a half years of study at Rock Valley College directed toward his educational goal.

In the fall of 1983, Anderson transferred to the University of Illinois—Champaign. In December 1985, he graduated with a bachelor of science degree in mechanical engineering. In February 1986, he was employed as a safety engineer for an aeronautics company at an annual salary of $27,500.

Beloit Corporation paid Anderson temporary total disability for the period from September 12, 1979 to October 15, 1983. As of December 1985, it had paid Anderson a substantial sum for his permanent partial disability. LIRC awarded Anderson travel expenses for the period he commuted to Rock Valley College and temporary total disability for seventy-two weeks while he attended the University of Illinois—Champaign.

Further facts are set out in our discussion of the issues.

## III.
## DETERMINATION OF VOCATIONAL REHABILITATION ELIGIBILITY

Beloit Corporation contends that LIRC erred in accepting DRS's certification of Anderson as eligible for vocational rehabilitation through a five-year university degree program in mechanical engineering.[1] It argues

---

[1]The Department of Industry, Labor and Human Relations administers ch. 102, Stats. Section 102.14(1), Stats. LIRC is attached to the department under sec. 15.03, Stats. Section

that LIRC was required to apply Wisconsin, not Illinois, criteria to the determination of Anderson's eligibility. In effect, Beloit Corporation claims that LIRC should have redetermined Anderson's eligibility for vocational rehabilitation instruction.

 The fallacy in Beloit Corporation's argument is its assumption that Anderson's eligibility for vocational rehabilitation training may be determined under Wisconsin law. Vocational rehabilitation instruction is provided to physically handicapped persons under the federal rehabilitation act of 1973, Public Law 93–112.[2] Instructional benefits under the Act are administered by the state in which the handicapped person resides or resided at the time of becoming physically handicapped. 29 USCS sec. 721(a)(14). Because Anderson was a resident of Illinois, DRS was the proper agency to make the determination that Anderson was eligible for vocational rehabilitation instruction under the federal act.[3] Under the federal act, DRS also properly determined Anderson's vocational rehabilitation plan. 29 USCS sec. 722.

Beloit Corporation claims that if its liability for vocational rehabilitation benefits is triggered by DRS's determination of Anderson's eligibility for vocational

---

15.225. Under sec. 102.18(3), LIRC may affirm, reverse, set aside or modify the findings and orders of the department. Our references to LIRC in this opinion include the department.

[2]The federal rehabilitation law cited in sec. 102.61(1), Stats.,—Public Law 78–113—is now found in Public Law 93–112 and appears generally as 29 USCS sec. 701 et seq.

[3]If Anderson had been a resident of Wisconsin, the determination of his eligibility for vocational rehabilitation instruction would have been the responsibility of the Division of Vocational Rehabilitation, Department of Health and Social Services, under sec. 47.02, Stats. *See* Wis. Adm. Code, sec. Ind 80.49(2).

rehabilitation instruction, serious equal protection questions are raised. It argues that the liability of two identical Wisconsin employers for such benefits could potentially be governed by different standards, depending on the residence of the employee.

Beloit Corporation does not argue that the Wisconsin vocational rehabilitation benefit statutes are unconstitutional.[4] Rather, it argues that we must choose a construction of the statutes which will preserve constitutionality. "Given a choice of possible interpretations, this court must select the construction that results in constitutionality rather than invalidity." *State ex rel. Lynch v. Conta,* 71 Wis. 2d 662, 689, 239 N.W.2d 313, 332 (1976). We do not have a choice of possible interpretations. As we explain in Part IV, LIRC may reject a vocational rehabilitation instruction eligibility determination only if the applicant misrepresented to or withheld from the responsible agency highly material facts or if the agency unreasonably interpreted the rehabilitation laws or clearly abused its administrative power. Because LIRC did not reject DRS's determination of Anderson's eligibility, it was required to determine his entitlement to temporary disability during rehabilitation instruction under sec. 102.43(5), Stats., and indemnity during rehabilitation instruction under sec. 102.61(1).

## IV.
## DRS'S ABUSE OF DISCRETION

In *Massachusetts Bonding & Ins. Co. v. Industrial Comm.,* 275 Wis. 505, 512, 82 N.W.2d 191, 194-95

---

[4]We do not therefore decide the constitutionality of secs. 102.43(5) or 102.61(1), Stats.

(1957), the court held that the industrial commission's [now LIRC's] power to review a vocational rehabilitation eligibility determination by the State Board of Vocational and Adult Education [now State Department of Health and Social Services] was binding on the commission unless it was shown that "highly material facts were misrepresented to or withheld from the state board or that the state board . . . applied an interpretation of the rehabilitation laws which is entirely outside the reasonable scope of interpretation and hence a clear abuse of administrative power." *Id.* The parties accept this standard of review.[5]

Beloit Corporation does not claim that Anderson misrepresented to or withheld highly material facts from DRS. It argues that DRS abused its discretion when it certified Anderson for college instruction in mechanical engineering. It claims that DRS abused its discretion because DRS made its decision to certify Anderson before its vocational rehabilitation counselor met with him; DRS did not obtain background information as to Anderson's employment; it did not contact Beloit Corporation; it made no attempt to place Anderson with Beloit Corporation or another employer; and it failed to consider other retraining alternatives, including those offered by Beloit Corporation.

The record supports LIRC's conclusion that DRS properly exercised its discretion. DRS established a complete file on Anderson; reviewed Anderson's medical records; had him tested by a psychologist for aptitude, ability and personality and interviewed him as to his academic record. Its vocational rehabilitation counselor considered Anderson's pre-injury potential. Vocational

---

[5]We therefore express no opinion whether the eligibility determination of DRS was binding on LIRC.

testing established that Anderson's vocational goal was realistic. His academic record confirmed that he could easily handle university-level educational training. His physical disability was obvious and Beloit Corporation does not dispute that that disability made Anderson eligible for vocational rehabilitation.

From Anderson's medical records, DRS's counselor concluded that Anderson would not be competitively employable as a draftsperson, training for which was offered by Beloit Corporation. He testified that the security guard position Beloit Corporation offered Anderson would not have restored Anderson to his pre-injury earning potential and that his degree in mechanical engineering had restored him to his pre-injury earning capacity. LIRC found:

> While the investigation which preceded the certification was by no means exhaustive, the critical factors of the nature and extent of the disabling injury, [Anderson's] youth and hence, lack of extensive job experience, his motivation, aptitude, and proven ability to succeed in college were all known at the time the counselor made the determination of eligibility. The exercise of discretion was sound . . ..

There was credible and substantial evidence supporting LIRC's conclusion that DRS's exercise of discretion was sound.

## V.
## THE EXTENSION OF BENEFITS BEYOND FORTY WEEKS

Beloit Corporation contends that if it is liable to Anderson for temporary disability during retraining, under sec. 102.43(5), Stats., and travel expense under sec. 102.61(1), its liability is limited to forty weeks.

Section 102.43(5), Stats., provides:

> Temporary disability, during which compensation shall be payable for loss of earnings . . . shall include such period as the employe may be receiving instruction pursuant to s. 102.61. *Temporary disability on account of receiving instruction of the latter nature, and not otherwise resulting from the injury, shall not be in excess of 40 weeks. Such 40-week limitation does not apply to temporary disability or travel or maintenance expense under s. 102.61 if the department [of industry, labor and human relations] determines that additional training is warranted.* The necessity for additional training as authorized by the department for any employe shall be subject to periodic review and reevaluation. [Emphasis added.]

Section 102.61(1), Stats., provides:

> An employe who is entitled to receive and has received compensation under this chapter, and who is entitled to and is receiving [instruction] under the vocational rehabilitation act, and amendments thereto, P. L. 78–113, as administered by the state in which the employe resides or in which the employe resided at the time of becoming physically handicapped, shall, in addition to other indemnity, be paid the actual and necessary expenses of travel and, if the employe receives [instruction] elsewhere than at the place of residence, the actual and necessary costs of maintenance, during rehabilitation, subject to the following conditions and limitations:
>
> . . ..
>
> (c) The employe may not have expenses of travel and costs of maintenance on account of training for a period in excess of 40 weeks in all, except as provided in s. 102.43(5).

The department has implemented these statutes by Wis. Adm. Code, sec. Ind 80.49. Beloit Corporation

claims that under sec. Ind 80.49(4), LIRC could not extend vocational rehabilitation benefits to Anderson beyond forty weeks. Section Ind 80.49(4) provides: "Extension of vocational rehabilitation benefits beyond 40 weeks may not be authorized if the purpose of such further training is primarily to improve upon preinjury earning capacity rather than restoring it."

Beloit Corporation argues:

> The awarding of retraining benefits for a five-year college engineering program . . . for a 19 year old high school graduate who had absolutely no [intention] of pursuing a college education prior to the work related injury and whose pre-injury employment consisted of work for a vending company as a repairman and as a maintenance trainee for Beloit Corporation clearly constitutes *improvement* rather than *restoration* of pre-injury earning capacity. [Emphasis in original.]

LIRC recognized that Wis. Adm. Code, sec. Ind 80.49 defined the issue. It stated that "[t]he central issue appears to be whether the purpose of [Anderson's] training beyond 40 weeks was primarily to enhance his preinjury earning capacity, rather than merely restore it."

LIRC interpreted Wis. Adm. Code sec. Ind 80.49(4) to not preclude training beyond forty weeks if such training assists the claimant to realize his or her "preinjury" earning *potential.* In other words, it construed "earning capacity" to include earning potential. LIRC found that "[w]hat [Anderson] was earning after one month on his second job after high school is not a reliable indicator of his earning *potential.* His preinjury earning capacity was virtually limitless in that a multitude. of employment avenues, with or without further training, were still available to him." (Emphasis added.)

In a note to its order, LIRC stated: "The fact that the engineering training resulted in [Anderson] achieving *a higher earning capacity* than he had when injured does not mean that such training was unreasonable. Given the circumstances of this particular case such training was a reasonable choice, and virtually any training he had undertaken would have resulted in some increase in his earning capacity." (Emphasis added).

Wisconsin Adm. Code, sec. Ind 80.49(1) adds weight to LIRC's construction of sec. Ind 80.49(4). Subsection (1) provides that "[t]he primary purpose of vocational rehabilitation benefits is to provide a method to restore an injured worker as nearly as possible to the worker's preinjury earning capacity *and potential.*" (Emphasis added.)

The application of the statutes to the facts presents a question of law which we review *de novo. Jaeger Baking Co. v. Kretschmann,* 96 Wis. 2d 590, 594, 292 N.W.2d 622, 624 (1980). Construction of an administrative provision is likewise a question of law. *State ex rel. Staples v. Young,* 142 Wis. 2d 348, 353, 418 N.W.2d 333, 336 (Ct. App. 1987).

LIRC argues, however, that our scope of review of its decision in this case is "extremely narrow" because the question of law is intertwined with facts, values and policy. It contends that we must defer to its decision because its interpretation and application of the vocational rehabilitation instruction provisions of the worker's compensation act are reasonable and rational. *West Bend Education Ass'n v. WERC,* 121 Wis. 2d 1, 12-14, 357 N.W.2d 534, 539-40 (1984) (where question of law is intertwined with facts, values and policy, reviewing courts should affirm agency's decision if the agency's view of the law is reasonable).

We will usually defer to an agency's interpretation of its own regulations. *State ex rel. Staples v. DHSS,* 136 Wis. 2d 487, 494–95, 402 N.W.2d 369, 374 (Ct. App. 1987). We will not, however, accept the agency's interpretation if it is unreasonable or inconsistent with the purpose of a statute which the agency administers. *Id.* at 497, 402 N.W.2d at 375. We consider therefore whether LIRC's construction of Wis. Adm. Code, sec. Ind 80.49 is unreasonable or is inconsistent with the vocational rehabilitation instruction provisions of the worker's compensation act.

Section 102.42(9)(a), Stats., states that "[o]ne of the primary purposes of . . . chapter [102] is restoration of an injured employe to gainful employment."[6] The worker's compensation act is to be liberally construed in favor of securing the basic objective of the law to protect injured workers. *West Allis School Dist. v. DILHR,* 116 Wis. 2d 410, 421, 342 N.W.2d 415, 421 (1984). To liberally construe the act is to give it meaning that conforms with the purpose of the act and the intention of the legislature. *Id.* at 422, 342 N.W.2d at 422.

An authority on worker's compensation has commented that "an adequate understanding of the legal issues and a proper decision of controversial [rehabilitation] cases is impossible without placing them within the total framework of the role of rehabilitation in compensation law." 2 A. Larson, *The Law of Workmen's Compensation,* sec. 61.21, 10–913 (1989 ed.). Larson states: "Restitution is the proper remedy when money damages

---

[6]This sentence is substantively identical to sec. 13(a) of the Council of State Governments' Workmen's Compensation and Rehabilitation Law. *See* 2 A. Larson, *The Law on Workmen's Compensation,* sec. 61.25, 10–949 n. 25 (1989 ed.).

will not restore something that is unique. How much clearer is it that, when the loss is the loss of use of a limb rather than of mere chattels, restitution is the most appropriate remedy." *Id.* at 10–912.[7] The legislative history of the vocational and rehabilitation instruction provisions of the worker's compensation act establishes that restitution of what the injured employee has lost is the legislative objective.

Prior to 1975 an employee receiving instruction under the vocational rehabilitation act could not receive temporary disability benefits, travel expenses or costs of maintenance on account of such training for more than forty weeks. Secs. 102.43(5), 102.61(3), Stats. (1973).[8] These sections were amended by secs. 32 and 51, respectively, ch. 147, Laws of 1975, to permit the department to extend such benefits "if the department determines that additional training is warranted," sec. 102.43(5).

---

[7]Larson notes that the question has arisen several times, sometimes directly, sometimes obliquely, of how far a training program can go in the direction of higher education. Larson, *supra,* sec. 61.22, 10–921. The cases discussed generally do not reject the idea of college education *per se* as an appropriate form of retraining. *Id.* at 10–922–924. One of those cases is *Massachusetts Bonding,* where the Wisconsin Supreme Court affirmed an award of expenses of travel and costs of maintenance under sec. 102.61, Stats., to a former crop duster pilot who was attending the University of Wisconsin under a one-year instruction plan approved by the state board of vocational and adult education. *But see City of Salem v. Colegrove,* 321 S.E.2d 654 (Va. 1984) (college education is not within boundaries of reasonable and necessary vocational rehabilitation); *Barkdull v. Homestake Mining Co.,* 411 N.W.2d 408 (S.D. 1987) (four-year college degree program exceeded the degree of rehabilitation necessary to enable employee to engage in suitable employment).

[8]Section 102.61(3) was renumbered sec. 102.61(1)(c) by 1985 Wis. Act 83, sec. 42.

Section 102.42(10) was enacted by sec. 29 of the same act. These enactments were made effective on the same date, December 30, 1975.

■

The Wisconsin Supreme Court has said with respect to other provisions of ch. 147, Laws of 1975: "Where statutes of such direct and immediate linkage are passed under identical circumstances, they must be considered *in pari materia* and harmonized if possible." *State v. ILHR Department,* 101 Wis. 2d 396, 403, 304 N.W.2d 758, 762 (1981). Sections 102.42(9)(a), 102.43(5) and 102.61(1)(c) must likewise be considered *in pari materia.* Construed together, they authorize the department to extend temporary disability, travel expense and costs of maintenance in excess of forty weeks if the department determines that additional training is warranted to restore an injured employee to gainful employment.

■

Wisconsin Adm. Code, sec. Ind 80.49 must be interpreted and applied to effect the intent of the legislature. "No agency may promulgate a rule which conflicts with state law." Sec. 227.10(2), Stats. The power of an administrative agency to make rules must exist within the framework of the statute creating it and must accord with the policy of such statute. *State ex rel. Baranowski v. Koszewski,* 251 Wis. 383, 386-87, 29 N.W.2d 764, 766 (1947).

Beloit Corporation contends that Wis. Adm. Code, sec. Ind 80.49 would have been satisfied if Anderson had been restored to the same hourly wage level he had reached prior to his injury. It contends that the purpose of training Anderson beyond forty weeks was primarily to improve upon his "preinjury" earning capacity rather than restore it, contrary to Wis. Adm. Code, sec. Ind 80.49(4).

Beloit Corporation's arguments are not without merit. The wording of Wis. Adm. Code, sec. Ind 80.49(4) is unfortunate. Under the vocational rehabilitation statutes, however, the department could not adopt a rule which limited its vocational benefit extension authority to training intended only to restore the injured employee's earning capacity to the employee's "preinjury" hourly wage. LIRC properly rejected a construction of sec. Ind 80.49(4) which would have required that result.

LIRC's construction of "earning capacity," as used in Wis. Adm. Code, sec. Ind 80.49 is reasonable, in the context of this case. LIRC considered that Anderson, because of his meager work experience, had not yet defined his earning capacity. His earning capacity was "virtually limitless." LIRC found:

> As a result of this industrial injury, the applicant lost the ability to perform not only most types of manual labor, but many skilled and semi-skilled jobs which require the coordinated use of both arms. The training to become a mechanical engineer was aimed primarily at restoring the applicant's preinjury earning capacity by utilizing his ambition, intellect, and remaining natural assets, and not at improving upon that capacity. In sum, the nature and extent of the disability, the applicant's youth, and his success in the training program warrant the extension of the vocational rehabilitation benefits through December 20, 1985.

LIRC's conclusion that Anderson's additional training was warranted is rational and reasonable. That conclusion is consistent with the legislative objective to make restitution to an injured employee for what he or she has lost. We conclude, therefore, that LIRC was authorized to grant Anderson the vocational rehabilitation benefits

595

it extended under secs. 102.43(5) and 102.61(1), Stats., and Wis. Adm. Code, sec. Ind 80.49.

*By the Court.*—Judgment and order affirmed.

EICH, C.J. (*dissenting*). The majority concludes, among other things, that benefits are payable to Anderson beyond the forty-week cutoff specified in sec. 102.43(5), Stats., and Wis. Adm. Code, sec. Ind 80.49(4) because, to paraphrase the code provisions, the purpose of the further training was primarily to restore his "preinjury" earning capacity rather than to improve upon it.* I disagree.

I appreciate that the provisions of ch. 102, Stats., are to be liberally construed in the injured worker's favor, and I agree that that is a proper response to job-related injuries under the chapter. I also agree that we owe some deference to the commission's interpretation and application of the statutes and rules through which it administers the workers' compensation program. Finally, I agree that both the statutes and the rule allow some leeway—that a reasonable degree of improvement to a young entry-level employee's earning capacity will not automatically bar the extension of benefits beyond forty weeks. Thus, to the extent the company maintains that benefits cannot be allowed beyond those necessary to restore Anderson to his "preinjury" hourly wage, I reject that argument.

But there must be a rule of reason here. And I do not believe that providing funds to assist Anderson in completing a university engineering degree with, accord-

---

*Wisconsin Adm. Code, sec. Ind 80.49(4) provides that "[e]xtension of vocational rehabilitation benefits beyond 40 weeks may not be authorized if the purpose of such further training is primarily to improve upon preinjury earning capacity rather than restoring it."

ing to the uncontradicted testimony, an attendant estimated hourly wage of $15.53, when he was earning $6.58 an hour at the time of the injury, and had a "preinjury" earning capacity of not more than $8.59, can be considered reasonable under any circumstances. I would hold, on this record, that the "rehabilitation" benefits provided in this case constituted an "improvement," rather than a "restoration" of Anderson's preinjury earning capacity within the meaning of Wis. Adm. Code, sec. Ind 80.49(4). As a result, I would limit his benefits to forty weeks.